UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DETECTIVE THOMAS E. MICHAELS, | Cv 07 7632 (PAC) |
| Plaintiff, | |
| -against- | COMPLAINT (injunctive relief requested) A trial by jury is requested |
| DR. DAVID LICHTENSTEIN, DR. BOCHICHIO, NYPD FOR THE CITY OF NEW YORK (BRONX BOROUGH), and DOES I, II, and II (Police Officers whose names are unknown to Plaintiff), individually and in their official capacities as offices of the NYPD FOR THE CITY OF NEW YORK, | |
| Defendants. | |

_____ )

## Introduction

1.   Plaintiff Detective Thomas E. Michaels ("Plaintiff" or "Detective Michaels") who unselfishly performed his duties in the wake of the collapse of the World Trade Center, and who as a result suffers *inter alia* vestibular disorder, hyper reactive airways, and vertigo, now faces discrimination and harassment from his employer and a maniacal doctor hell-bent on influencing the Article II Board to deny him disability benefits and who has demonstrated utter contempt for Detective Michael's well-being and his request for disability benefits. Detective Michaels brings this action for damages arising out of discrimination under the Americans With Disabilities Act, other unconstitutional policies and actions, and state and common law claims of emotional distress and intentional

11

infliction of emotional distress, prima facie tort, , all arising from Defendants' wrongful denial of his disability application on or about June 1, 2007

## Jurisdiction

2.  Plaintiff brings this action against Defendants to redress the deprivation of rights secured him by *inter alia* the United States Constitution, Americans With Disabilities Act ("ADA", 42 U.S.C. § 12111, <u>et</u> <u>seq.</u>), and New York State Human Rights laws (N.Y. Exec. Law § 296 *et seq.*).

3.  Plaintiff is a citizen of New York. Each defendant is, upon information and belief, an individual citizen or corporate or governmental entity of New York. The matter in controversy exceeds the sum o$75,000, exclusive of interest and costs.

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1332, and 1343(a)(3), and 42 U.S.C. §1983.

5.  Plaintiff also invokes supplemental jurisdiction of this Court over his state claims against Defendants for common law violations pursuant to 28 U.S.C. §1367 as the common law claims form part of the same case or controversy.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1391 as the cause of action occurred in this District.

## **Parties**

7.  At all times mentioned herein, Plaintiff was a resident of New York.

8.  Defendant NYPD FOR THE CITY OF NEW YORK (BRONX BOROUGH) ("Defendant Police") operates the NY Police Department for the City of New York pursuant to the laws of the State of New York.

22

9. Defendants DOES I, II, and III are sued both individually and in their official capacity. At all times pertinent hereto, these Defendants were employed by Defendant Police.

10. Defendants DOES I, II, and III were acting as police officers and detectives in the scope of their employment for Defendants Police at some times mentioned herein and at other times mentioned herein Defendants DOES I, II, and III acted beyond the scope of their employment.

11. Defendant DR. DAVID LICHTENSTEIN ("Defendant Dr. Lichtenstein"), is a citizen of the State of New York and is employed by Defendant Police as a Department Physician and has been given Inspector status by Defendant Police despite the that he never attended the Police Academy.

12. DR. BOCHICHIO, is a citizen of the State of New York and is employed by Defendant Police as a Department psychologist.

13. At the time of the alleged incident and at all times pertinent hereto, Defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

### FACTS
(As to all Claims)

14. On or about September 11, 2001, Detective Michaels worked on "the pile" at Ground Zero (AKA where the World Trade Center collapsed) and at Fresh Kills landfill where he was exposed to toxic dust and fumes and metallic dust.

15. Detective Michaels is a 49 year old father of four daughters who has been employed by Defendant Police for almost 20 years and had been promoted to the

rank of detective 3rd Grade and has never been disciplined. His yearly salary is between $80,000 and $100,000 depending on his overtime.

16. Detective Michaels is on the verge of retirement.

17. Medical practitioners licensed in New York diagnosed Detective Michaels with vestibular disorder and dysfunction, vertigo, gait ataxia, memory loss, headaches, brain dysfunction, and RADS (reactive airways dysfunction syndrome AKA hyper reactive airways)..

18. Detective Michaels applied to his employer for disability.

19. Since his application for disability and for time before this, Defendants, led by Defendant Dr. Lichtenstein, have harassed plaintiff, ridiculed him, humiliated him, placed him in physical danger by requiring him to work as a police officer without a gun, accused him of faking his disability symptoms, prevented him from obtaining the medical services required to treat his employment related ailments and interfered with his requests for sick leave. Police officers are afforded unlimited sick leaves and Dr. Lichtenstein was committed to interfering with Detective Michaels' requests for sick leave.

20. Dr. Lichtenstein ordered Detective Michaels to Psych Services and made a loud announcement heard by third parties that he was "bullshitting" him and that he had a low tax ID number (indicated he was retiring soon).

21. On or about December 18, 2006, Detective Michaels was treated by Neurologist, Dr. Michael Daras, who diagnosed him with vestibular dysfunctions, characterized by dizziness and gait ataxia, headaches, and memory problems. Dr.

44

Daras determined the cause to be Detective Michaels' work at the World Trade Center rescue and recovery.

22. On or about April 3, and 10, 2007, Detective Michaels was treated by a neuropsychologist Dr. Thomas Kay, who diagnosed him as suffering from brain damage resulting in cognitive impairment caused by his work on "the pile" at ground zero after 9/11 and his exposure to toxic substances including heavy metal such as zinc and copper. He was diagnosed with deficits in auditory short and long term memory, abnormal effects o interferences of new material on learning, word finding problems, and deficits in performance with an increase in tax complexity. A letter from the neuropsychologist concerning what would be in the report was presented to Dr. Lichtenstein.

23. Dr. Lichtenstein ignored all reports about Detective Michaels and the words spoken to him by Detective Michaels' neurologist, Dr. Daras.

24. On or about October 21, 2006, Detective Michaels was treated by Dr. Joseph Brill who diagnosed him as suffering from asthma/reactive airway dysfunction syndrome. Dr. Brill determined that this condition was causally related to Plaintiff's exposure to toxins at the World Trade Center disaster area and that this condition appears to be permanent and renders him unable to perform his duties at full capacity.

25. On or about February 12, 2007, Detective Michaels fell ill again and reported to Dr. Lichtenstein. Dr. Lichtenstein told Detective Michaels that if he wanted to stay home he would have to forfeit his driver's license.

26. On or about February 13, 2007, while Detective Michaels was on restricted duty, Dr. Lichtenstein threatened that he would have him locked up if he drove his car. After the Article II Board denied Detective Michaels disability, Dr. Lichtenstein ordered him back to full duty without his guns.

27. Dr. Lichtenstein contacted the New York State DMV in an effort to harass plaintiff and interfere with his performance of his job by having his driver's license revoked. Dr. Lichtenstein falsely wrote to the DMV that he had performed a physical examination of Detective Michaels. Dr. Lichtenstein was aware that Detective Michaels cannot perform his duties without a drivers' license.

28. Concurrently with his efforts to revoke plaintiff's driver's license, Dr. Lichtenstein instructed the Police Employee Relations to deny plaintiff transportation to his Lefrak appointments.

29. Detective Michaels observed surveillance vehicles near his residence.

30. On or about June 1, 2007, Defendant Police denied Detective Michaels' application for disability benefits by an Article II medical board. At this time, Dr. Lichtenstein threatened Detective Michaels that if he went out on sick leave he would face "Administrative Charges" which would have precluded Detective Michaels from retiring until conclusion of the administrative hearing.

31. Dr. Lichtenstein, attempted to have Detective Michaels "psyched" off his job. In other words, he tried to have him removed from his job for psychological reasons.

32. On or about June 29, 2007, Defendant Police's psychologist, Dr. Bochichio, (spelling unknown), threatened to have Detective Michaels surveyed off his job for psychological reason even though she was not aware of any psychological reasons. She advised Detective Michaels that he could avoid Dr. Lichtenstein's efforts by quitting. She also committed HIPPA violation by contacting Detective Michaels' neuropsychologist without his permission.

33. Dr. Lichtenstein told Detective Michaels to give up on his effort for disability due to medical reasons and to resort to disability for psychological reasons.

34. On or about August 6, 2007, when Detective Michaels was examined by Psych services, the examiner indicated she had violated HIPPA laws by indicated she had contacted defendant's neuropychologist when defendant had not signed a consent form for such a contact.

35. Detective Michaels sustained multiple damages caused by defendants' conduct, including but not limited to, severe mental anguish, severe mental pain and suffering, damage to name and reputation, severe stress, embarrassment, humiliation, severe nervousness, severe anxiety, nightmares, and paranoia.

36. Detective Michaels' daughters has been forced to miss days of school because of Defendants' harassment.

37. Detective Michaels' ability to perform at work has been detrimentally impacted by defendants' conduct.

38. As a direct and proximate result of the acts and omissions of defendants, Plaintiff was mentally and physically sick, suffering nightmares, stomach pain,

77

headaches, sleeplessness, anxiety and continues to feel pain and was forced to suffer pain and mental cruelty, and was forced to incur medical and legal expenses.

### COUNT I: VIOLATION OF THE ADA
(Defendant Police)

39. Plaintiff incorporates the above allegations.

40. Medical practitioners licensed in the State of New York, have diagnosed Plaintiff as being "disabled."

41. Plaintiff requested reasonable accommodation from Defendants including car rides through Employee Relations and separation from gas fumes, nail polish and cleaners in the 50 building that were available and would not have imposed an undue burden on Defendants.

42. Defendants refused to provide any reasonable accommodation to Plaintiff.

43. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to the ADA.

44. Detective Michaels has been damaged by defendants' conduct.

### COUNT II: VIOLATION OF THE ADA
(Defendant Dr. Lichtenstein individually)

45. Plaintiff incorporates the above allegations.

46. Medical practitioners licensed in the State of New York, have diagnosed Plaintiff as being "disabled."

47. Plaintiff requested reasonable accommodation including car rides through Employee Relations and separation from gas fumes, nail polish and cleaners in

88

the 50 building that were available and would not have imposed an undue burden on Defendants.

48. Defendant Dr. Lichtenstein, on a frolic, or more accurately, a rampage, instructed Defendants to refuse to provide any reasonable accommodation to Plaintiff and bears personal liability.

49. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to the ADA.

50. Detective Michaels has been damaged by defendants' conduct.

**COUNT III: VIOLATION OF PLAINTIFF' CONSTITUTIONAL RIGHTS UNDER §1983**
(Defendant Police)

51. Plaintiff incorporates the above allegations .

52. The intentional actions of Defendants violated the rights of Plaintiff as guaranteed by the Fourteenth Amendment to the United States Constitution and such misconduct constituted a departure from the evolving standards of decency that mark the progress of a maturing society, where Defendants acted with intent to harm the Plaintiff as an employee of Defendant Police for tolerating such conduct.

53. Plaintiff has been damaged there from.

**COUNT IV:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(All Defendants)

54. Plaintiff incorporates the above allegations.

55. Defendants  intentionally inflicted emotional distress on plaintiff.

56. Defendants' conduct was calculated, intentionally or recklessly, to cause Detective Michaels severe emotional distress.

57. Defendants' conduct was shocking and outrageous Conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

58. Plaintiff suffers severe emotional distress resulting from defendants' conduct.

59. Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

60. Plaintiff has been damaged there from.

## COUNT V:  DEFAMATION
(All Defendants)

61. Plaintiff incorporates the above allegations.

62. Defendant Dr. Lichtenstein, stated that Plaintiff was suffering from mental deficiencies and was not fit to perform his job.  Defendants' statement was intended to hold plaintiff up to ridicule, contempt or scorn.

63. Defendants' statements were heard by third persons.

64. Defendants conduct constituted slander *per se*.

65. Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

**COUNT VI:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

10

(All Defendants)

66. Plaintiff incorporates by the above allegations.

67. Defendants' intentional actions towards Plaintiff, abused Plaintiff in a manner that was so extreme, outrageous, and unjustified, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community and caused Plaintiff to suffer physical and emotional distress for which Defendants are liable.

68. The intentional abuse of Plaintiff was unjustified and done with actual malice and wanton indifference. Plaintiff is thus entitled to exemplary damages.

69. Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

### COUNT VII: DECEIT
(All Defendants)

70. Plaintiff incorporates the above allegations.

71. Defendants made material misrepresentations of fact including Plaintiff's mental sanity.

72. Defendants made these statements with knowledge of their falsity intending to harm plaintiff.

73. Defendants DOES I,II, and III, while acting as agents and employees for Defendants Police in their capacity as police officers, owed a duty to Plaintiff to perform their police duties for which Defendants are liable.

74. As a proximate result of Defendants' conduct, Plaintiff has sustained permanent injuries and he has incurred medical bills and other expenses. These

injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

75.     Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

### COUNT VIII:  NEGLIGENT MISREPRESENTATION
(All Defendants)

76.     The above allegations are incorporated.

77.     Defendants made defamatory statements regarding Plaintiff with reckless disregard for the truth of such statement.

78.     Plaintiff has sustained pecuniary damage there from.

79.     Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

### COUNT IX:  NUISANCE
(All Defendants)

80.     Plaintiff incorporates the above allegations.

81.     Dr. Lichtenstein's contacting the DMV to revoke Plaintiff's driver's license for no reason other than to harass Plaintiff, constituted nuisance. Plaintiff requests that Dr. Lichtenstein be enjoined from contacting the DMV regarding Plaintiff.

82.     Defendants owed a duty to Plaintiff to train and supervise and otherwise control its police officers including Defendant Dr. Lichtenstein regarding

constitutional guarantees and other matters incidental to the exercise of police functions.

83. As a proximate result of Defendant Police's negligent failure to provide adequate training, supervision, and control of the individual Defendants, Plaintiff has sustained permanent injuries and he has incurred and will continue to incur medical bills and other expenses. These injuries have caused and will continue to cause Plaintiff pain and suffering, both mental and physical.

84. Defendant failure to provide adequate training and supervision to its police officers constitutes a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including Plaintiff.   Plaintiff is thus entitled to exemplary damages.

85. Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

### COUNT X:   PENDENT STATE LAW CLAIMS
(All Defendants)

86. The above allegations are incorporated.

*87.* The laws of the State of New York have also been violated including N.Y. Exec. Law Section 290 et seq. and Civ. Rights Law Section 40 *et seq.*.

*88.* The law of the City of New York have also been violated including N.Y.C. Adm. Code Section 8-107 *et seq.,*

89. Defendant Police is liable for compensatory damages under the doctrine of *respondeat superior* for the negligence of the individual defendants committed within the scope of their employment.

90. Plaintiff has been damaged there from.

**COUNT XI:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Only Defendants Dr. Lichtenstein and Dr. Bochichio)

91. Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

92. Dr. Lichtenstein and Dr. Bochichio, on a frolic, or more accurately, a rampage, sought to and did inflict emotional distress on plaintiff.

93. Defendants' conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

94. Defendant Lichtenstein's and Dr. Bochichio's conduct was outside the scope of their employment by Defendant Police and was not necessary to accomplish an assigned task that might reasonably be expected of an employee to perform and was conducted for his personal purpose.

95. Plaintiff has been damaged there from.

**COUNT XII:   PRIMA FACIE TORT**
(Only Defendant Dr. Lichtenstein)

96. Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

97. Dr. Lichtenstein, on a frolic, or more accurately, a rampage,

98. special (pecuniary) damages. Particularized statement o identifiable loss.

99. Malice and intent to injure, Done with sole intent to harm

100. Defendant Lichtenstein's conduct was outside the scope of his employment by Defendant Police and was not necessary to accomplish an

assigned task that might reasonably be expected of an employee to perform and was conducted for his personal purpose.

### COUNT XIII:   TORTIOUS INTERFERENCE WITH CONTRACT
(Only Defendant Dr. Lichtenstein)

101.   Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

102.   Dr. Lichtenstein, was award of Plaintiff's employment contract with Defendant Police.

103.   Dr. Lichtenstein, on a frolic, or more accurately, a rampage, interfered with Plaintiff's employment contract with Defendant Police.

104.   Defendant Lichtenstein's conduct was outside the scope of his employment by Defendant Police and was not necessary to accomplish an assigned task that might reasonably be expected of an employee to perform and was conducted for his personal purpose.

### COUNT XIV:   INTENTIONAL INTERFERENCE WITH PROPERTY
(**Drivers License**)
(Only Defendant Dr. Lichtenstein)

105.   Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

106.   Dr. Lichtenstein, on a frolic, or more accurately, a rampage, interfered with Plaintiff's driver's license.

107.   Defendant Lichtenstein's conduct was outside the scope of his employment by Defendant Police and was not necessary to accomplish an assigned task that might reasonably be expected of an employee to perform and was conducted for his personal purpose.

**COUNT XV:   DEFAMATION**
(Only Defendant Dr. Lichtenstein)

108.    Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

109.    Dr. Lichtenstein, on a frolic, or more accurately, a rampage, made defamatory statements heard by third persons about Plaintiff.

110.    Defendant Lichtenstein's conduct was outside the scope of his employment by Defendant Police and was not necessary to accomplish an assigned task that might reasonably be expected of an employee to perform and was conducted for his personal purpose.

**COUNT XVI:  DECEIT**
(Only Defendant Dr. Lichtenstein)

111.    Plaintiff incorporates the above allegations except those alleging conduct within the scope of employment.

112.    Dr. Lichtenstein made material misrepresentations of fact including Plaintiff's mental sanity.

113.     Dr. Lichtenstein made these statements with knowledge of their falsity intending to harm plaintiff.

114.    As a proximate result of Dr. Lichtenstein's conduct, Plaintiff has sustained permanent injuries and he has incurred medical bills and other expenses. These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

115.    Plaintiff has been damaged there from.

116.   WHEREFORE, Plaintiff requests that this Court enter judgment against the Defendants and award the following amounts:

<u>All Defendants:</u>

a. One Million Dollars ($1,000,000) compensatory damages in favor of Plaintiff;

b. Five Million Dollars ($5,000,000) exemplary damages in favor of Plaintiff;

c. Disability Retirement Benefits;

d. Costs of this action, including reasonable attorney fees to the Plaintiff pursuant to The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988 (1976); and

<u>Dr. Lichtenstein individually:</u>

a. One Million Dollars ($1,000,000) compensatory damages in favor of Plaintiff;

b. Five Million Dollars ($5,000,000) exemplary damages;

c. Costs of this action, including reasonable attorney fees to the Plaintiff pursuant to The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988 (1976) and the Americans With Disabilities Act ("ADA", 42 U.S.C. § 12111, *et seq.*).

And for such other and further relief as the court may deem appropriate.

Dated: New York, New York
       August 27, 2007

**Nelson M. Stern**
Nelson M. Stern, Esq.

       (NMS8646)
       Attorneys for Plaintiff
       964 Third Avenue, Floor 5
       New York, New York 10155

       Tel:    212-233-8330

18

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.